Good morning, everyone. Our first case of the morning is case number 117846, People of the State of Illinois v. Joshua Tolbert. Are you ready to proceed? Ready? Good morning, Madam Chief Justice, Honorable Members of the Court. May it please this Court. I am Assistant State's Attorney Annette Collins. I represent the people of the State of Illinois in the matter before this Court. We brought this appeal because the appellate court reversed a defendant's conviction for aggravated, unlawful use of a weapon and wrongly held that the state had failed to prove an element of that offense. That element, or that so-called element that the appellate court thought we didn't prove, is found in the invitee clause contained in the aggravated UW statute. That clause exempts out individuals who are on the land or legal dwelling of another person as an invitee with that person's permission. The appellate court read that to be an element simply because it was placed within the aggravated UW statute. The problem is the appellate court ignored entirely another statute section in the Article 24 gun crimes. That statute section, Section 24-2, is entitled exemptions. That statute lists a number of exemptions to each of the UW and aggravated UW crimes and expressly and plainly states that in aggravated UW, the invitee clause contained therein is an exemption that must be proved by the defendant and is not an element that needs to be negated by the state or pled in the indictment. Was that issue brought before the appellate court? You're correct, the appellate court doesn't engage in that section at all. Was that raised by the state? Yes, it was raised by the state. In fact, that was the state's entire argument. And instead of reading the plain language of Section 24-2, which must be read in conjunction with the aggravated UW statute because it refers directly to it and states without any question that the invitee clause is an exemption, the appellate court instead relied on a case from this court, a 1998 case, People v. Laubscher, that construed an entirely different clause contained in the aggravated UW statute and engaged in a statutory construction analysis of that clause. Laubscher has no place in this case for a number of independent reasons. The first reason, of course, is Laubscher dealt with a different clause that was not contained in Section 24-2, the exemption statute. So the legislature, when it added the clause at issue in Laubscher, the on your own land or abode clause, it never simultaneously defined it as an exemption, like the instant invitee clause, which it did. The other thing about Laubscher is that the clause in Laubscher, the on your own land clause, is qualitatively different than the invitee clause at issue here. And we know this, even though the analysis in Laubscher is only two paragraphs, we know this to be true because the on your own land or abode clause has been part of the UW offenses in Illinois for over half a century. In fact, it's 1963, the criminal code, UUW, had the on your own land or abode language in it. By contrast, the invitee clause at issue here was only added in 2009. It has not been part of the UUW or ag UUW offense. By forcing the defendant to raise this issue and to testify, to establish it, aren't you forcing him to justify the exercise of his Second Amendment rights? No, we're not, Justice Freeman, because he doesn't have a Second Amendment right to have a gun on someone else's private property. There's been no case that has ever held that a defendant's Second Amendment right extends to other people's private property. In fact, that's why the legislature, no doubt, created this invitee clause, not only as an exemption, but with the permission component of it, too. In fact, defendants' kind of constitutional impediments to a plain language construction of the statute, none of them actually have merit. The Second Amendment doesn't in any way state who should carry the burden. It simply states that there's protected conduct, and that conduct is not protected on someone else's private property. If we do a plain reading of the statute here, we're going to hear about how the invitee clause is in the definitions portion, from opposing counsel, and then saying that therefore it's an element of the offense based on our case law, and then you point out the exemption. Whichever side we choose, aren't we then rendering one statute superfluous to the other? No, you're not. Because if we take a look at the principle in Lobsher, that principle of statutory construction, it is not a hard and fast rule that every time there's language in a statute's definition, it must be an element. Actually, that rule is quite the contrary. That rule says that sometimes it is an element if it is so connected to the body of the offense that the offense can't be described without it. Now, the invitee clause wasn't added until 2009, so the offense of UUW can most certainly be defined without it. The other thing, Justice Thomas, with respect to that position that the defendant takes, is that he ignores the second corollary to the statutory construction principle in Lobsher. And that corollary is that just because it is in the body or, excuse me, the definition of an offense, a particular exemption or exception clause is not an element if it merely withdraws certain acts and persons from the operation of the statute. So if we go all the way back, go back 100 years, and we take a look at the statutory construction principle, there's a handful of cases that have actually said that language in a definitional statute is not an element, even though it's in the definition. That's Sokol from 1904, Krzalski from 1934, Saltis from 1927, Green and Butler. All of these cases from this court have actually said that language in a statute is not an element. If we read that section without that language, does it describe illegal conduct? Yes, it most certainly does. And in fact, we have to recognize that because this language wasn't added until 2009. And clearly, before 2009, we had a fully active and perfectly defined UUW and aggravated UUW statute. Ms. Collins, if we find the statute is ambiguous, do we apply the rule of lenity? And would this mean that the invitee exception must be read as an element of the offense? I have a two-part answer to that. The first answer is where the language is plain, obviously the rule of lenity doesn't apply. This court has said that a number of times. But also, even where language is ambiguous, that doesn't necessarily require the rule of lenity to create a construction inconsistent with the plain legislative language. In fact, this court has stated that it's only where a statute is grievously ambiguous, that the rule of lenity itself should control. And in this case, where the language of the two related statutes is so clear and so plain on its face, and it expresses the legislative intent without question, the rule of lenity would operate to actually countermand the plain language. And that's certainly not what the rule of lenity is ever meant to do. And in fact, no statutory construction principle is ever to be used to contradict the plain language of the statute. That turns aides of construction on their head. And it actually violates the cardinal rule of statutory construction, which is to ascertain and give effect to the legislative intent. Here, there's no need to engage in statutory construction, aides of construction or statutory construction principles in Laubscher or the rule of lenity, because the language itself is so plain. And the inquiry really can end with the plain language, as it should. The defendant makes one additional point that I think bears mention, and that is that he tries to make something of the fact that the invitee clause is found in proximity to the own land or abode clause. As I've already stated, the own land or abode clause has a different character than the invitee clause. It's always been part of our UUW offenses, unlike the invitee clause, which is just a recent addition. But it also is significant that this court has said for, again, about a century that position in the act is of no consequence. Proximity alone doesn't establish whether it's an element or not. Laubscher doesn't control this case. Statutory construction principles are not needed in this case. This case is a straightforward application of plain language of the statute. So, Ms. Collins, maybe I misapprehended part of your argument. You're not taking the position that 24, I'm trying to remember the numbers, 24-2, the exemption provision is somehow more specific than the identical language in 24. If we were to engage, if we were to need to go beyond even the plain language, that would certainly be a statutory construction principle that we can use. I'm certainly not abandoning that, but I don't even think we need to go there. I also don't think we even need to take a look at the way the legislature passed Section 24-2, the exemption statute's inclusion of the invitee clause, but that's another sort of heaping on of clear legislative intent here, because when the legislature created this invitee clause in 2009, in the same exact public act, it did one more thing. It did two things. It added the invitee clause to the aggravated UUW and UUW statutes. Then, in those very sections, it added a reference in the exemption clause, specifically listing the statutory places where it put that invitee language in UUW and aggravated UUW, and specifically adding the very same language to the exemption clause that it was to be considered an exemption. And as we know, the exemption statute has always been considered exemptions, not elements, and it plainly states that. So any suggestion that it can be an element and an exemption is simply absurd, and it's also contrary to this court's decision in People v. Smith, a decision that came at least a decade before Laubscher, where this court recognized these exemptions as an integral part of the Article 24 gun crimes and recognized Section 24-2 as exclusively to be proven by the defendant, not even affirmative defenses. And it's our position that these exemptions, if they're certainly not affirmative defenses, they most definitely cannot be considered elements, too. Your Honors, plain language controls in this case, and for these reasons and those expressed in our brief, we would ask that this court reverse the appellate court judgment. Thank you. Thank you. Good morning, Your Honors, Counsel, and may it please the Court, I'm Assistant Appellant Defender Rob Melching, here on behalf of Appellee Joshua Tolbert. To begin, I think this might be enlightening, I'd like to start with something that's been lost in the wash a little bit. This amendment was put in place to fix what was known as an outstanding issue at the time. In 1998, this court held in Laubscher, based on the plain meaning, and that's their quote, of Section 24-1A, that the abode requirement was an element of AUW. Five years later, a guy named Kirk Price was arrested for being in his sister's household possessing a gun, and the state's theory was that that did not qualify as his abode. He appealed, and the First District held that although the abode requirement is a substantive element of AUW, the requirement at the time did not include invitees. Certain people, Representative Bradley in this case, and I know we're not looking to the legislative intent, it must be determined this is ambiguous, but this is what happened. He thought this was an unjust, arbitrary distinction, and he, citing Price as his inspiration, his sister's house case, sought to amend the definition of AUW. In his words, to clear up the definition of the offense, so that you would not be subject to the offense if you were an invitee. They did this by interweaving an invitee requirement right within the existing list of elements. As identified by this court in Laubscher, the legislature passed the amendment in making sure that Price would not reoccur. It accomplished what it set out to do. It's right there in the middle of the description of AUW. Regardless of anything else, we know that. Now the state has asserted that Laubscher only found that the abode requirement was an element because they did not find language elsewhere that evidenced a different intent, and that's not true. The court found under the plain meaning of 24-1A, only 24-1A, the definition, that this abode requirement was an element. So this is how the state's argument kind of abandons notice, because this is how Section 24-1 would read under the state's interpretation. It would read, when on his own land or his abode, that's an element. Legal dwelling, that's an element. Fixed place of business, element. But then invitee, no, that's not an element. And then any pistol, revolver, stun gun, et cetera, we're back to elements. Criminal statutes are written to give the person of ordinary intelligence a reasonable opportunity to know what is prohibited. Under the state's reading, an Illinois citizen would not have this reasonable opportunity. One of the elements would just not be. And the state is not only arguing this, they're arguing that this is unambiguously so. So not only would the defendant, when he looked at this offense, be wrong, but the definition would be affirmatively misleading. Looking at 24-1A, it's apparent that the legislature sought, in reaction to Price and based on Lobster, to broaden the abode requirement to include invitees, and they did that. Regardless of what they did in 24-2, we know that they did that. There is 24-2, though, and we acknowledge that. So with this context in mind, there's a clear path to follow. 5 ILCS 76 states that when two or more acts relate to the same subject matter and acted by the same assembly, they should be construed together, except in case of an irreconcilable conflict. And this is what distinguishes us from the state. We say that there is not necessarily an irreconcilable conflict. The court has previously described such a conflict as a situation where statutes are so antagonistic that both cannot even operate. That's not the case here. You could go through a trial with both the state bearing the burden of proving a fact beyond a reasonable doubt, and the defendant having the option of raising the same question as a quasi-affirmative offense, as a Smith offense. There would be no problem. It's a belt-and-suspenders approach. It seems that the legislature was just being cautious. What about the H that talks not about burden of proof, but about the pleading requirement? Information or indictment need not negate any exemptions contained in the article. Absolutely. And it does say that. It says it need not negate any exemptions contained in the article. The exemption in 24.2 is an exemption, and the state need not negate that. They do have to negate the element contained in 24.1. I'm saying that these can interact simultaneously, that just because they both exist doesn't mean that they inherently do. Help me understand that. If the statute says specifically it need not be pled. The exemption. The exemption need not be pled. Correct. Then how does that reconcile with your theory that it does have to be? Well, you know, there is an odd thing here where they did it in two different places. The second thing, where they put it in the exemption list, that need not be pled. It says, in the quote you're referring to, need not negate any exemptions contained in this article, referring to the section 24.2H, not the part, not the definition of 24.1. Back to your belt and suspenders approach, how is the jury instructed in that? The jury would be instructed on elements in the normal way, and the negative being this requirement. And then afterwards, or I'm sorry, and then the defense could also request a similar instruction, but phrased as a Smith quasi-affirmative defense. And would they be instructed on the burden on the affirmative defense? Correct. So the state would have the burden? Beyond a reasonable doubt. And at the same time, the defense would have the ethics and preponderance. Now, that's what the legislature did. This is not an unusual proposition. The legislature regularly prohibits conduct by multiple statutes. Here they, in multiple ways, sought to ensure possessing a gun in MIT was not illegal. Just as one prohibition doesn't prevent the operation of another, neither does a method for exoneration. So there's no problem. That's our first argument. Now, in the event that this court finds that there is an irreconcilable conflict between the requirements, our path is equally clear. If there's a conflict between two statutory requirements that pertain to the same question of fact, then we have an ambiguity. And I heard one standard, but the most recent standard I've heard was from this court's decision in Gaitan, where they said it's capable of being understood in two different ways. I mean, Your Honors, I believe that's the situation we're in here. In that case, we can look at this. Mr. Melton, I just want to go back just for a second. I know it's not your argument, but you did start on legislative intent. Is it your thought that they just wanted to doubly protect here, you know, make it an element and also make it an affirmative defense? I believe that's exactly what they did. I believe they went into this intending to form an element. They said they wanted to broaden the definition. They said they wanted to broaden the abode requirement. At some point, they decided they also wanted to add somewhat of an affirmative defense. But if we are in this state of ambiguity, we do have this ability to look at this legislative history, which did, regardless of the affirmative defense stuff, did show an open and shut intent to broaden the abode requirement in response to price to include the invitee requirement. And furthermore, of course, this opens up lenity. If a defendant looked at the statute that was written on his indictment, 24.2 is not written on your indictment, 24.1 is, you could read the entire definition in 24.1, 1.6a, having no idea about the exemptions. There's no reference. And then in Lobsher, this court found that the abode requirement that's right next to it is an element. And then appellate courts in Briscoe in this case, these are reasonable people, found that it was an element, just based on 24.1. And in fact, the state, if you want to talk about reasonable people, actually conceded it was an element in Briscoe. So given that the plain language of the definition and the case law interpreting that definition would have informed a citizen that the invitee requirement is an element of AGUW, it would have offended lenity to construe it differently. This court should not render the thing that the legislature set out to enact an amendment to the actual definition of the offense a nullity. Now, there's a couple things that the state brought up that I'd like to address briefly. They bring up this idea that since it was added in 2009, it's not descriptive of the offense. That's not how statutes work. When you broaden the definition of an offense and change it, that's the offense we're dealing with at the time. You don't have to look at a temporal element to consider whether or not the offense exists. But there is a test when getting to this. This court recently stated in Close, and I think it's what we really do have to determine if you're trying to figure out that fact, is if a person can commit every element of the offense, but is withdrawn from liability by some act, such as the possession of a permit, like in Close, driving with a revoked license is already illegal. Close, you have this permit, you can get taken out of the legality. Then the exception is merely an exemption. If, however, the offense is not even committed if the exception is disproved, like in Lobster in this case, then the exception operates as an element. If you look at 24-1, the way the AG-UW statute works is you have to get through A or B. A and B include these invitee requirements, these abode requirements. Before you can even get to whether or not he was a juvenile, whether or not he had a FOIA card, anything like that. These are threshold requirements. You cannot commit the offense of AG-UW, period, if you are an invitee or at your own abode. Another thing the state brought up was this fact that you don't have a Second Amendment right to possess a gun on another person's property. But you do have that right now. Since this sea change with Illinois Supreme Court, I'm not saying that you can possess a gun on somebody's property with no problem, but you can't be arrested and jailed for a year, and then only a year later be able to assert the fact that you were an invitee. So I believe that's a core distinction. So far as the fact that one would be more specific than the other, I would like to clarify that the amendment itself did not add 24-2H. 24-2H was existing at the time. The actual acts that were added, or the actual amendments that were added, which was the addition of this invitee requirement to an existing list of exemptions for shooting ranges, parades, hunters, and transportation of nonfunctional weapons, was added at the same time as this invitee element. 24-2H already existed at the time. So does this Court have any further questions? In the event this Court does not have any further questions, we ask for these reasons, and those stated in our briefs, that this Court affirm the judgment of the appellate court. Thank you, Your Honors. Thank you. Very briefly, Your Honors, if we take a look at the defendant's argument, the paradigm that he creates actually turns statutory construction principles on their head and makes the plain language of statute subordinate to an interpretation based on outside conditions occurring in the process of legislation. His argument starts from the premise that because the legislature intended to create this invitee exception and put it in the body of the offense, that we can stop there and look at the legislative intent as far as that's concerned, and it's set in stone. It must be an element. Then he moves on only reluctantly to Section 24-2, and instead of reading the plain language of that statute to mean what it says, he makes that plain language subordinate to the construction that he's already created based on the manner in which he sees this legislation being put to the floor of the General Assembly. That's not how this court has ever interpreted the legislature's language. It has never used an implicit inference to be greater than the explicit language of a statute. Clearly, defendant is ignoring the language of Section 24-2, yet Section 24-2, that exemption statute, has been part of the Article 24 crimes for, again, like I said, well over half a century. When the legislature adds language to the exemption statute, it means it to be an exemption, not a belt and suspenders element plus exemption. That construction is simply absurd, and the attempt to instruct the jury is just a representative example of how that would be absurd. The burden is on the defendant. The legislature said it's on the defendant. The legislature said that the state need not negate it. This means it's not an element, and whether the legislature started out with the belief that it wanted to create an element, that's not what it did. It added it in the exemption statute. What that means is the legislature either changed its mind or put it in the definitional statute simply to give everyone notice that we're adding this, but it has to be defined as something that is the defendant's burden to prove. And that makes perfect sense because it's just like all of the other exemptions insofar as the information about defendant's invitee status, just like the information about whether he's a security guard or he's at a parade ground with a relics license, that's within his knowledge. It's not within the state's knowledge. It's not what the state would know necessarily about the commission of a crime here. Defendant's ability to get permission from a landowner is something that he can prove easily, and to the extent that defendant complains about having to wait a year and prove this at trial, that's not necessarily the case. Many times charges aren't brought because the defendants have somebody there immediately to say, I have permission to have this done. But even if he did have to prove it at trial, that doesn't make it unconstitutional or in any way improper. Plenty of defenses, including all of the exemptions, have to be proved at trial. That's not constitutionally infirm or improper at all. Defendant suggests that it's ambiguous, but again, that's based on his improper reading of the statute. Section 24-2 has been in effect for a long time. It has always been read in concert with the other Article 24 gun crimes. It's part and parcel of the definition of those crimes. That's how the legislature defines exemptions. It's how they define these gun crimes. And it's not a quasi-affirmative defense. It's an exemption, plain and simple. Laubscher doesn't control here, but Laubscher is interesting because it's cited in an appellate court case. That appellate court case was Chmielenko. And Chmielenko said something that I think is very appropriate today. Chmielenko said that had the legislature intended to classify the exception, the on-your-own-land-or-boat exception, language of the UUW as an exemption, it would have been a simple matter to effectuate. Could you help me with my concerns about the real world? Yes. If the police were to come upon the property of someone and find that his guest has a weapon in his possession, so the officer turns to the owner of the land and said, did you allow this man to bring a weapon here? What is he going to say? And then are we now facing one year before this defendant can bring the owner of the land into court and say, well, I gave permission? I can't see him being knowledgeable enough at that time and at that moment to say he had my permission because the statute says. What happens in the real world? Even in the real world, there is the absolute expectation that everybody knows the law. So the other thing, Justice Freeman, is that's not necessarily how the situation would play out in every single case. And I would suggest that there's nothing, again, constitutionally infirm or improper  Self-defense is a defense to murder. People have murder trials and have to raise self-defense. Again, it is an affirmative defense, but it's no different than any defense that an accused individual would raise at trial. And the delay, again, doesn't make it improper. As to defendants' position that Briscoe got it wrong and our appellate court got it wrong, so that must somehow mean that reasonable minds can get it wrong and that somehow means that there's not sufficient notice here, that doesn't follow. Errors can be made. That doesn't mean that the language of the statute isn't plain. Here there was a mistake made by the appellate court when it refused to read the plain language of Section 24-2. That doesn't make it reasonable. In this case, the plain language of the statute controls and the appellate court's decision ignores that plain language and must be reversed. For these reasons, and again, those expressed in our brief, we would ask that this court reverse the appellate court judgment. Thank you. Thank you. Case number 117846, People of the State of Illinois v. Joshua Talbert, will be taken under advisement as agenda number one. Ms. Collins and Mr. Melching, thank you for your arguments this morning. You are excused at this time.